So we'll hear U.S. v. Armstrong and then come to you in Boylan v. R2s. U.S. v. Armstrong. May it please the court, I am Richard A. Finkel, counsel for Derrick Armstrong. A grievous injustice has occurred in this case, and that's what brings us to this court today. This court and the Supreme Court have declared that a sentence that is based upon erroneous or false information constitutes an abuse of discretion, violates due process, and therefore requires resentencing. And that's what happened here. In the district court, on the argument at sentencing on the violation of probation, the government told the court that this defendant, the appellant, had not paid any of back taxes that were ordered in restitution. Do we know whether the district court based the sentence to any extent on the question of restitution? This court has held repeatedly that actual reliance is not required to be established. This court has held that in the 1976 opinion of United States v. Robin and repeated that. But in direct answer to Your Honor's question, in the very long argument at sentencing, the court only interrupted the government once. And that was immediately upon the government's statement that no payments had been made. The court stopped the government and said, you mean the $216,000? And the government essentially said yes. Not essentially. Said yes. And the court continued. And the reason that that wasn't corrected by the defense was what? The defense attempted to correct that. At the conclusion of the government statement, defense counsel got up and said three times, may I reply, Judge? The district court said no. Please, Your Honor, may I reply? The district court said no. Your Honor, there has been a misrepresentation. The district court said no and sentenced Mr. Armstrong, the appellant, to jail. That's what happened. Defense counsel three times sought to correct the record, and the district court said no. Now, in United States v. Robin, there were two Robin cases. The first decision by this court in 76 set this circuit's standards for considering an erroneous and false presentation at sentencing. The government cites some cases from other circuits. That's not the law in this circuit. In this circuit, actual reliance, as I just said to you, Judge Sack, is not required. The government, in its brief, most respectfully, seeks to withdraw that. The government, in its brief, misconstrues this court's decision in King v. Hoke. In King v. Hoke, the government, based upon that, the government says that it is the established that it is quite probable that the false information affected the court. That's not what this court said in King v. Hoke. Rather, this court said, repeated the statement of Robin and the statement in McGee that says actual reliance is not required, and then listed several cases where that standard had been applied. And in King v. Hoke, it mentioned that in McGee, we set aside a sentence after concluding that the sentencing judge's reliance on an improper factor was quite probable. In McGee, the standard was satisfied and more, because there was quite probable. But that's not the standard. Next, in the third point of this court's decision in Robin, is that a court's failure to take appropriate steps to ensure fairness and accuracy must be held as plain error and an abuse of discretion. Here, defense counsel tried three times to correct the error, and the court refused to listen. And finally, this court in Robin emphasized that accuracy is a prime concern, and therefore a defendant must be given an opportunity to rebut information that he contests. We were not given that opportunity to rebut. The government statement that the false statement, the government fails to even, in this court, come forward and admit that this was a false statement, even though it knows, as a matter of fact, that at least 14 and as many as 16 payments were made. This was an important part of the government's presentation because the government was attempting to show that Mr. Armstrong had no respect for the court and was rejecting the court's order, was disobeying the court's order. Sixteen payments over 22 months is not disrespect, is respectful. I'm not even beginning to suggest that this is material, but I take it the payments were small. Too small, you are? No, no, not too small. They were small. I'm sorry. I didn't hear you. They were small payments. They were small payments. We admitted that in papers filed with the court. But I don't think the size of the payments are important, number one. Number two, he's financially strapped, to say the very least. And number three, the order was only 10% of gross income to begin with. That's what the restitution payments were based upon. The principle is whether you are being disrespectful. Making 16 payments is not, as the government was trying to establish, disrespectful. Finally, if I may, I recognize that asking this court to remand to a different judge is a difficult presentation. However, in applying the test that this court established in the second Robin decision, the 1977 Robin decision, this court said for three factors and counseled that we should focus on the firmness of the trial judge's earlier expressed views. In my brief, I point out multiple factors that established that the district court was very firm and therefore unlikely to objectively abandon its prior decision. And those factors include, again, that he refused to allow defense counsel to correct the record, that he didn't know what defense counsel wanted to say, right? No, he did, most respectfully, Your Honor. What in the record supports that assertion? Because the third request by defense counsel was, Your Honor, there has been a misrepresentation. The first request was, may I reply. The second request was, please, Your Honor. And the third... Yes, but he had no idea what the misrepresentation was. Now, maybe he should have, but he had no idea what it was. True? He had no idea what it was because, most respectfully, he wouldn't allow defense counsel to continue. If the district court said, what's the misrepresentation, counsel, then the court would have known. But he didn't give us that opportunity. If we were to agree with you on the substance of your argument, but disagree with you about sending it to a different judge, you would want it to be sent to the same judge anyhow for re-sentencing? Well, of course I would request a different judge, yes, but I... I understand. Half a pie is better than no pie. Sometimes it isn't. That's why I'm asking. Okay. Yes, we would request that, Your Honor. May I make one final comment, and that is, I emphasize to the Court to be cognizant of the fact that Mr. Armstrong began his sentence on March 30th, and that, according to the Bureau of Prisons, his anticipated date of relief of release is June 20th. He has served, as of today, more than half of that sentence. Thank you. I thank the Court. Ms. Washington, how is it that the government told the judge below that nothing had been paid? Your Honor, that information, and again, may it please the Court, my name is Alicia Washington, and I'm here representing the government. That statement was made based on the government's good faith basis of what was in the violation of probation report, where the probation report specifically stated that the IRS had not received any of the back taxes owed, and to date, that none of those payments had been paid. You're pointing to the probation department. I am pointing to the government's reliance on that information. I will note that that was inaccurate. So the government still would argue, and based on the information that continues to be provided to the government, it's not inaccurate that the IRS has not received any payments. What it appears to be is that there's a disconnect between what's gone to the clerk of the court and what is owed or what the IRS has received. How do you agree if you basically were conceding that your statement to the district court was inaccurate? Did I misunderstand you? Yes, the government would concede that to the extent . . . I think there is still a little bit of a tension because the judgment has two requirements. One, that the defendant has to . . . In fact, made 14 or 16 or whatever payments it is with respect to the court's order. The government learned that when the defendant, or at least was cognizant about it when the defendant filed its motion for reconsideration in the district court. That is when the government sort of took the time to look back and see what the tension was between the statements that were made for the basis of the second charge, which the government acknowledged that it was dropping and that the defendant was not pleading to, but . . . Is the underlying problem that what we were dealing with was restitution to the IRS and that the payments were made to the clerk of court, is that what happened? Yes. Yes, Your Honor. I think that is. And the government was not aware that there was . . . Secondly, did the judgment of conviction prescribe that restitution was to be paid to the clerk for distribution to the IRS? It does not say that it is to be distributed to the IRS. It does say that restitution should be paid to the clerk of the court, but then there is a separate requirement in the judgment that the defendant complies with the IRS for the assessment of all taxes owed and payment of those taxes. Is it clear from the judgment that the measure of the restitution was the back taxes? It is not. I think there is a tension there. I think now sort of continuing to . . . The pre-sentence report identified the restitution payee as who or what entity? The IRS. Okay. So it's clear from the judgment that the restitution is for the account of the Internal Revenue Service? That is correct. That's a matter of public record? That is correct. And there are no other restitution payees, is that right? That is . . . Yes, that is correct. Now, does the docket sheet reflect the restitution payments? The docket sheet itself does not reflect that certain payments were made. So if you look at the public docket sheet, it won't say that the defendant made X payment on X date, if that's my . . . So it's nowhere on the docket sheet, either restricted or unrestricted? That is correct, Your Honor. How does that happen? I mean, restitution payments are, in our district, always on the docket sheet. Probation has that information, as I understand it. And I will note for the court that there is a separate section in the violation of probation report that was provided to the court that talks about the court-ordered obligation. It talks about . . . The court-ordered obligation of the restitution payments and how many have been made at that point, but then separately talks about how the defendant has an obligation to the court and to the IRS. Now, you're not saying that he had to pay the money twice, once to the court? I don't believe so, no, Your Honor. No, I do not believe that. Now, one more question. Defense counsel, in attempting to get the judge to hear him after you got finished conveying, I assume innocently, the misinformation, said, Judge, there's been a misrepresentation. Did you ask him, defense counsel, what the misrepresentation was? At that point in time, the government did not. Why not? I think, similarly, I didn't know what he was referring to, and I didn't, as I was standing there, think that any misrepresentation had been made based on what I was portraying or what I was characterizing from the probation report. And I think, importantly, the issue about the restitution is peripheral to what the court was considering. If that's so, this was a defendant who was given a non-incarceratory sentence, and the net effect of your representation was to suggest to the court, look, you gave him a break, but you expected him to make these payments, and you know what, Judge, he's not making them. When, in fact, he made 14, even if the amounts were small. So, I mean, it does suggest to a sentencing judge that someone whom he or she had given a break to has just ignored the other obligations. Isn't that actually the reason you told the judge that, and that was the impression the judge got? What the government was trying to convey, more generally, was the defendant's history of noncompliance and that the crux of what the government was, the argument that was being made, was that it wasn't until the court, the district court, put the defendant in jail for approximately 5 days that he then began to comply with the issue, what was at issue in the second charge, which is that he was not cooperating with the... That was a different type of cooperation.  You ordered restitution, or you ordered these payments, and he hasn't made a one. I'm finding it difficult to understand how we don't remand. The district judge may think that that didn't affect his sentence. He may tell us that, but that's not apparent on the record. I'm not sure how you can argue to us, as you do in your brief, that we can confidently conclude that it didn't inform the sentence in any way. I think, to actually answer that question, I think it's speculation that it did affect the district court. That's not the standard. You have to show us that it did, that it, we have to be convinced that the judge would have imposed the same sentence regardless. Yes, and I think I can demonstrate that. Some of the cases that the government refers to in its brief discuss how the court knows that inaccurate information was relied upon, such as when the court gives its reasons for the sentence, that it reemphasizes the incorrect information or the inaccurate information, none of which happened here. And I understand that defense counsel is relying on an interruption that was made during the government's presentation. And I think that in the same way the district court interrupted defense counsel when he was discussing the defendant's family, I don't know that we can say, well, because the interruptions were during the district, the defense counsel's statements about the defendant's family, that's why he decided to do three months. Sotomayor, you're saying that unless the judge references the misinformation, there is no basis for remanding to ensure that he did not factor it into sentence? I mean, one can hypothesize all kinds of egregious conduct that might be represented to the court, and that the court might not specifically say reference in his sentence, because the judge doesn't have to. That's correct, Your Honor. But again, the government points to the cases that were cited, such as McDavid, where it says reversal was required where a district judge, while giving his reasons for the sentence, plainly expressed and repeatedly emphasized mistaken belief. We're not necessarily talking about reversal. We're talking about vacating and remanding. The judge can decide whether it does or doesn't, whether it did or didn't inform the sentence. That is fair, Your Honor. I would say that the record, however, the record before this Court, certainly there is sufficient information for the district court to have imposed the three-month sentence that it did provide based on the history of noncompliance by the defendant and the probation department provided a number of examples of how the defendant had not been compliant. I think we started by asking you how this happened, because, of course, the importance of the government's representations being accurate to the district court can't be overstated. That didn't happen here. I'm just surprised that the government doesn't think, okay, let it go back before the district judge. We think it will likely be the same sentence, but we want the defendant to be sentenced on an accurate statement of the facts. The government certainly does want the defendant to be sentenced on an accurate representation of the facts. If the government, if the Court, and it seems like the Court is inclined to remand it, then the government would request that it be remanded to the same district court judge. We don't think there are any exceptional circumstances or special circumstances that would warrant remanding to a different judge. Thank you. Mr. Finkel, I don't think you reserved any time, so we'll just take the matter under advisement. Thank you very much.